ROBINSON *v.* GORDON OIL CO.

1. DAMAGES—CONVERSION OF OIL—WILFUL TRESPASSER—INNOCENT TRESPASSER.

> General rule of damages in actions for conversion of oil is that, although a wilful trespasser is liable for the enhanced value of the oil at the time of conversion without deduction for expenses for improvements by labor, an innocent trespasser may set off the reasonable cost of production.

2. JUDGMENT—LAW OF CASE.

Former decision is the law of the case on second appeal on all questions presented and decided on first appeal, but is not conclusive of any question not there decided.

3. SAME—OBITER DICTA.

Statements in an opinion concerning some rule of law or proposition not necessarily involved nor essential to determination of the case are but *obiter dicta* and lack the force of an adjudication.

4. MINES AND MINERALS—CONVERSION OF OIL—GOOD FAITH.

Oil well driller, defendant in action for conversion of oil, is entitled to deduct cost of producing it, where, under the circumstances, he is found to be an innocent trespasser.

Appeal from Midland; Verdier (Leonard D.), J., presiding. Submitted January 18, 1934. (Docket No. 139, Calendar No. 37,669.) Decided March 6, 1934.

Bill by William A. Robinson against Gordon Oil Company, an Ohio corporation, and others to establish validity of oil and gas leases, for an accounting, and for other relief. Decree for defendants. Plaintiff appeals. Affirmed.

*Charles H. Goggin* and *James E. Ryan,* for plaintiff.

*Penny & Clark* and *Chester E. Morris,* for defendants.

EDWARD M. SHARPE, J. On October 2, 1930, Noah J. Skinner and wife were the owners of a 60-acre tract and an 80-acre tract of land in Greendale township, Midland county, and executed two leases to the plaintiff, one on each tract, for the purpose of developing oil. Both leases were placed in escrow. The escrow agreement as to the 60-acre lease provided that actual work in connection with the drill-

ing of said well should commence on or before December 1, 1930, to entitle plaintiff to delivery of the lease; as to the 80-acre lease, it was provided that actual work should commence on or before January 15, 1931.

About November 10, 1930, plaintiff met Mr. Mason of the Gordon Oil Company and made an agreement whereby the Gordon Oil Company was to drill a well on the 60-acre tract. The oil company moved a drilling rig on the property at the location pointed out by plaintiff and was ready on November 25, 1930, to start drilling. The plaintiff left the vicinity about November 17th and did not return until June of the following year. The company had expended $1,500 in moving and placing their drilling rig on the premises. Under the contract between plaintiff and the oil company for the drilling of the well, plaintiff was to pay the company $3,000 when the rig was complete, $1,000 when the drive pipe was landed, and other specified amounts when the Marshall, Traverse, and Dundee formations were reached, with the price for drilling set at $2.50 per foot. Plaintiff also agreed to furnish drive pipe and casing. Plaintiff never complied with any part of this agreement.

On December 9, 1930, the Skinners requested the Gordon Oil Company to take a lease of the lands effective January 17, 1931, two days after plaintiff was required by his lease to commence drilling on the 80-acre tract. The actual lease from Skinners to the Gordon Oil Company was signed January 26, 1931. During this interval of time the plaintiff was in various cities in an attempt to finance the undertaking. In December, he wrote to the Skinners assuring them that he intended to live up to his agreement and also wrote defendants asking them to return his copy of the lease and escrow receipt as he

needed these to complete financing. On January 3, 1931, plaintiff wrote a "peril" letter addressed to Mr. Skinner, Mr. Mason, and defendant oil company, warning them that "if you * * * attempt to develop said property, you will do so at your peril."

Prior to January 26th the company was informed by their attorney, Mr. Dodds, that the leases to plaintiff were no longer in effect. The company was also told by Mr. Ryan, plaintiff's attorney, that if he were in their place he would go ahead and do as he wished and give plaintiff no further attention. Drilling was commenced by the company February 10, 1931, and the well completed June 6, 1931. The first oil was sold June 8, 1931.

This case has come before this court once before and is reported in 258 Mich. 643. The court there validated the lease to the 60-acre tract given by the Skinners to plaintiff, but declared plaintiff's 80-acre lease invalid. In the decision of that case, Mr. Justice McDONALD, speaking for the court, used the following language in referring to the Gordon Oil Company leases from the Skinners (258 Mich. 651):

"We think the methods used to secure the leases were unfair and closely resemble fraud, but we do not base decision to cancel them on that ground."

Again (page 651):

"Plaintiff has not had a square deal."

The court also said (page 651):

"The question of an accounting we leave undetermined because there is no evidence from which a determination could be made."

Upon the subsequent trial of the accounting action in the lower court, it was stipulated that the agreed value of the oil taken from the well was $20,079.70

and the agreed cost of production $17,000. The trial court held that defendant Gordon Oil Company was an innocent trespasser and therefore entitled to set off the cost of production of the oil. From this decision, plaintiff appeals.

The sole question now to be determined is, was the defendant oil company a wilful trespasser or a casual and innocent trespasser? If the trespass was wilful, plaintiff is entitled to the full value of the oil without deduction; if the trespass was casual, defendant is entitled to deduct from its value the cost of producing it.

The general rule in the United States in actions for the conversion of oil, as in the case of conversion of minerals and other natural products of the soil is that, although a wilful trespasser is liable for the enhanced value of the oil at the time of conversion without deduction for expenses or for improvements by labor, an innocent trespasser is liable only for the value of the oil undisturbed; that is, he is entitled to set off the reasonable cost of production. *Guffey* v. *Smith,* 237 U. S. 101 (35 Sup. Ct. 526); *Turner* v. *Seep,* 167 Fed. 646, modified in *Midland Oil Co.* v. *Turner,* 102 C. C. A. 368 (179 Fed. 74); *United States* v. *Midway Northern Oil Co.,* 232 Fed. 619; *United States* v. *McCutcheon,* 238 Fed. 575; *Kahle* v. *Crown Oil Co.,* 180 Ind. 131 (100 N. E. 681); *Bryson* v. *Crown Oil Co.,* 185 Ind. 156 (112 N. E. 1); *Dyke* v. *National Transit Co.,* 22 App. Div. 360 (49 N. Y. Supp. 180); *Miller* v. *Tidal Oil Co.,* 161 Okla. 155 (17 Pac. [2d] 967, 87 A. L. R. 811); *Henry & Barnes* v. *Winona Oil Co.,* 83 Okla. 253 (200 Pac. 985, 23 A. L. R. 189); *Corrigan* v. *Shell Petroleum Corp.* (Tex. Civ. App.), 62 S. W. (2d) 663; *Taylor* v. *Higgins Oil & Fuel Co.* (Tex. Civ. App.), 2 S. W. (2d) 288.

In *Bryson* v. *Crown Oil Co., supra,* it was said at page 158:

"It has been held that one who wilfully and intentionally takes ore, timber or other property from the land of another must respond in damages for the full value of the property taken, at the time of the conversion, without any deduction for the labor bestowed or expense incurred in removing and preparing it for the market; but that if he commits the wrongful act unintentionally, or by mistake, or in the honest belief that he is acting within his legal rights, the measure of liability is the value of the property taken, less what it costs to produce it."

The latest application by this court of this distinction in the measure of damages for a wilful or innocent trespass is found in *Eagle Oil Corp.* v. *Cohasset Oil Corp.*, 263 Mich. 371, an oil conversion case. The court there stated the rule as follows (page 378):

"The plaintiff was an innocent trespasser on the land of Joseph H. Metcalf. As such it is liable to the owner for the oil taken, but may deduct therefrom the cost of production. In *Henry & Barnes* v. *Winona Oil Co.* (syllabus), 83 Okla. 253 (200 Pac. 985, 23 A. L. R. 189, and annotation), the rule is announced as follows:

" 'A person who, in good faith, enters into peaceable possession of land upon which he owns an oil and gas lease and produces oil and gas therefrom, and thereafter said lease is declared void or invalid, the measure of damages to the landlord, in an action for an accounting for the oil and gas produced from said premises by the lessee, is the value of the oil at the surface or in pipe line or tanks wherever the same may be, less the reasonable cost of producing the same.' "

It is argued by plaintiff that the statements of this court on the former appeal, quoted *supra,* in reference to the methods of obtaining the Gordon Oil Company leases, are now *res judicata* on the matter of defendant's good faith. Plaintiff has used the term *"res judicata"* in a loose sense to apply to the doctrine more properly known as "law of the case." When a case which has been remanded to the court

below after a hearing on appeal, is again appealed, the former decision is the "law of the case" on all questions presented and decided on the first appeal. *Porth* v. *Cadillac Motor Car Co.*, 209 Mich. 89; *American Insurance Co. of Newark* v. *Martinek*, 216 Mich. 421; *Anderson* v. *Railway Co.*, 217 Mich. 210; *Kosnicki* v. *Railway Co.*, 217 Mich. 245. But the former appeal is not conclusive of any question not there decided. *Campau* v. *Detroit Driving Club*, 144 Mich. 80; *Gleichman* v. *Famous Players-Lasky Corp.*, 241 Mich. 266.

In the former appeal of this case, the court did not base its decision on the defendant's lack of good faith. After the statement above quoted that defendant's methods in securing its leases "closely resemble fraud," this court specifically added:

"We do not base decision to cancel them (defendant's leases) on this ground."

Having decided that the plaintiff's lease was valid, defendant's lease automatically became invalid for the simple reason that there was a prior subsisting lease on the same land. That the defendant's good or bad faith was immaterial in the prior appeal is shown by the fact that the oil company's lease on the 60-acre tract was ordered cancelled, while its lease on the 80-acre tract was declared valid. Yet both leases had been obtained at the same time and the negotiations and circumstances were identical throughout.

Consequently, any indication in the former decision on the matter of good faith was simply dictum. *Kosnicki* v. *Railway Co., supra; People* v. *Barltz*, 212 Mich. 580 (12 A. L. R. 520); *People* v. *Case*, 220 Mich. 379 (27 A. L. R. 686). In the case last cited, the court said at pages 382, 383:

"It is a well-settled rule that any statements and comments in an opinion concerning some rule of law or debated legal proposition not necessarily involved nor essential to determination of the case in hand, are, however illuminating, but *obiter dicta* and lack the force of an adjudication."

The question of good faith on the part of the defendant must be determined from all the facts and circumstances surrounding this case. The original entry of the defendant oil company upon the land in question was not wrongful but was in pursuance of a contract with plaintiff to drill a well; the actions of defendant in the preparations for drilling and in the actual drilling of the well were the things that plaintiff wanted done. The failure of the plaintiff to perform his part of the contract by furnishing money and supplies to the defendant was an indication to the defendant that the plaintiff had apparently abandoned the project. The consequent possibility of loss to defendant together with the advice of counsel that defendant had a right to make new leases with the Skinners, plaintiff's leases having been forfeited, and the insistence of the Skinners upon a new lease because of their belief that the oil and gas were being depleted by the operation of other wells close by, were elements that induced defendant to sign a lease with the Skinners and to proceed with drilling the well and pumping oil. From these circumstances, we must conclude that the defendant Gordon Oil Company was an innocent trespasser and may deduct the cost of producing the oil from the value of the oil taken.

Judgment affirmed, with costs to defendant.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.